No. 22-2190

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

CATHERINE ANTUNES,

*Plaintiff-Appellant,*

v.

XAVIER BECERRA, in his official capacity as Secretary of U.S.
Department of Health and Human Services; RECTOR AND VISITORS
OF THE UNIVERSITY OF VIRGINIA,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Western District of Virginia

## UNIVERSITY OF VIRGINIA RESPONSE BRIEF

JASON S. MIYARES
  *Attorney General*

CHARLES H. SLEMP, III
  *Chief Deputy Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-5315 – Telephone
(804) 371-0200 – Facsimile

March 23, 2023

ANDREW N. FERGUSON
  *Solicitor General*

ERIKA L. MALEY
  *Principal Deputy Solicitor General*

KEVIN M. GALLAGHER
  *Deputy Solicitor General*

RICK W. EBERSTADT
  *John Marshall Fellow*

*Counsel for University of Virginia
Defendants-Appellees*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS........................................................i

TABLE OF AUTHORITIES....................................................ii

INTRODUCTION.............................................................1

JURISDICTIONAL STATEMENT...............................................3

ISSUES PRESENTED........................................................4

STATEMENT OF FACTS......................................................4

I.    Factual Background..................................................4

II.   Procedural History..................................................8

STANDARD OF REVIEW....................................................11

SUMMARY OF ARGUMENT..................................................12

I.    Longstanding Supreme Court precedent demonstrates
      that the vaccination policy complies with the Fourteenth
      Amendment..........................................................13

      A.   The vaccination policy complies with the Due Process
           Clause because it has a rational basis..........................13

      B.   Antunes's equal protection claim is not preserved and also
           fails...........................................................23

II.   UVA's vaccination policy for its healthcare employees
      complied with the Fourth Amendment ...............................25

      A.   The vaccination policy was not a search or seizure, and in
           any event was reasonable .....................................25

    B.    UVA did not provide Antunes with an unconstitutional condition for her employment ........................................ 29

CONCLUSION ................................................................. 31

CERTIFICATE OF SERVICE ....................................... 34

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Agostini v. Felton,*
    521 U.S. 203 (1997)................................................................21

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................11

*B.A.B., Jr. v. Board of Educ. of City of St. Louis,*
    698 F.3d 1037 (8th Cir. 2012)..............................................27

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................11

*Blue v. Craig,*
    505 F.2d 830 (4th Cir. 1974)..................................................3

*Burns-Fisher v. Romero-Lehrer,*
    57 F.4th 421 (4th Cir. 2023) ................................................11

*Callahan v. North Carolina Dep't of Pub. Safety,*
    18 F.4th 142 (4th Cir. 2021) ................................................13

*Carroll v. City of Westminster,*
    233 F.3d 208, 212 (2000)......................................................31

*Central State Univ. v. American Ass'n of Univ. Professors,*
    *Cent. State Univ. Chapter,*
    526 U.S. 124 (1999)......................................................24, 25

*City of Cleburne, Tex. v. Cleburne Living Ctr.,*
    473 U.S. 432 (1985)................................................................24

*Collins v. City of Harker Heights,*
    503 U.S. 115 (1992)................................................................13

*County of Sacramento v. Lewis,*
    523 U.S. 833 (1998)................................................................14

*Cruzan v. Director, Missouri Department of Health*,
497 U.S. 261 (1990) ................................................................ 20, 21

*Dahl v. Board of Trustees of W. Michigan Univ.*,
15 F.4th 728 (6th Cir. 2021) (per curiam) ........................................ 15

*Doe v. Settle*,
24 F.4th 932 (4th Cir. 2022) ............................................ 14, 15, 17, 19

*Edwards v. City of Goldsboro*,
178 F.3d 231 (4th Cir. 1999) ................................................... 11

*Engquist v. Oregon Dept. of Agr.*,
553 U.S. 591 (2008) ............................................................ 27, 28

*Eriline Co. S.A. v. Johnson*,
440 F.3d 648 (4th Cir. 2006) ................................................... 24

*Evans v. Chalmers*,
703 F.3d 636 (4th Cir. 2012) ................................................... 11

*Fracis v. Giacomelli*,
588 F.3d 186 (4th Cir. 2009) ................................................ 11, 12

*Goe v. Zucker*,
43 F.4th 19 (2d Cir. 2022) ..................................................... 21

*Dean ex rel. Harkness v. McKinney*,
976 F.3d 407 (4th Cir. 2020) ................................................... 14

*Jacobson v. Massachusetts*,
197 U.S. 11 (1905) ........................................................ *passim*

*Keene Corp. v. Cass*,
908 F.2d 293 (8th Cir. 1990) .................................................... 3

*Kheriaty v. Regents of the Univ. of California*,
No. 22-55001, 2022 WL 17175070 (9th Cir. Nov. 23, 2022) ......... 16, 17

*Koontz v. St. Johns River Water Mgmt. Dist.*,
570 U.S. 595 (2013) ........................................................... 30

*Lee v. United States Citizenship & Immigration Services*,
592 F.3d 612 (4th Cir. 2010) ..................................................................... 3

*Lukaszczyk v. Cook Cnty.*,
47 F.4th 587 (7th Cir. 2022) ............................................. 16, 17, 19, 22

*Michigan v. Chesternut*,
486 U.S. 567 (1988) ...................................................................... 27

*Minnesota v. Clover Leaf Creamery Co.*,
449 U.S. 456 (1981) ...................................................................... 18

*Monroe v. City of Charlottesville, Va.*,
579 F.3d 380 (4th Cir. 2009) ......................................................... 26

*O'Connor v. Ortega*,
480 U.S. 709 (1987) ...................................................................... 28

*Ray v. Roane*,
948 F.3d 222 (4th Cir. 2020) ......................................................... 26

*Regan v. Taxation With Representation of Wash.*,
461 U.S. 540 (1983) ................................................................ 29, 31

*Rodriguez de Qijas v. Shearson/American Express, Inc.*,
490 U.S. 477 (1989) ................................................................... 1, 20

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
141 S. Ct. 63 (2020) ................................................................. 15, 17

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
547 U.S. 47 (2006) ................................................................... 30, 31

*South Carolina Wildlife Fed'n v. Limehouse*,
549 F.3d 324 (4th Cir. 2008) ........................................................... 3

*Thomson v. Marsh*,
884 F.2d 113 (4th Cir. 1989) ......................................................... 28

*Torres v. Madrid*,
141 S. Ct. 989 (2021) .................................................................... 26

*United States v. Mendenhall,*
    446 U.S. 544 (1980) ............................................................. 26

*Valdez v. Grisham,*
    No. 21-2105, 2022 WL 2129071 (10th Cir. June 14, 2022) .......... 16, 18

*Washington v. Housing Auth. of the City of Columbia,*
    58 F.4th 170 (4th Cir. 2023) ............................................... 14

*We The Patriots USA, Inc. v. Hochul,*
    17 F.4th 266 (2d Cir. 2021) ...................................... *passim*

*Workman v. Mingo County Bd. of Ed.,*
    419 Fed. Appx. 348 (4th Cir. 2011) ............................... 21, 22

## Statutes

28 U.S.C. § 1291 ................................................................. 3

42 U.S.C. § 1983 and § 1988 ............................................... 3

Administrative Procedure Act, 5 U.S.C. § 702 ...................... 3

## Other Authorities

Peter J. Embi *et al.*, *Effectiveness of 2-Dose Vaccination with
    mRNA COVID-19 Vaccines Against COVID-19–
    Associated Hospitalizations Among Immunocompromised
    Adults — Nine States*, CDC Morbidity and Mortality
    Weekly Report (Nov. 5, 2021), shorturl.at/deBMS ............... 18

U.S. Const. Amend. IV ....................................................... 25

# INTRODUCTION

It has long been settled law that the States may impose reasonable vaccination requirements to combat the spread of infectious diseases consistent with the Fourteenth Amendment's Due Process Clause. *Jacobson v. Massachusetts*, 197 U.S. 11 (1905). The State "has the right to protect itself against an epidemic of disease which threatens the safety of its members," and an individual's vaccination decisions are thus "subject to such reasonable conditions as may be deemed [necessary] by the governing authority." *Id.* at 26, 31.

Appellant Catherine Antunes raises here the same arguments that the Supreme Court rejected in *Jacobson*: that a vaccination requirement is "nothing short of an assault upon [the] person," infringing the "right of every freeman to care for his own body and health in such way as to him seems best." *Id.* at 26. Antunes argues in no uncertain terms that this Court should defy *Jacobson* because it is "ancient history." Antunes Br. at 9. But Supreme Court precedent continues to bind the Courts of Appeals unless and until the Supreme Court overrules it. *Rodriguez de Qijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989). The Supreme Court has never overruled *Jacobson*. To the contrary, "for over

100 years it has stood firmly for the proposition that the urgent public health needs of the community can outweigh the rights of an individual to refuse vaccination." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293 n.35 (2d Cir. 2021). State vaccination requirements, including for children in public schools and employees in government healthcare facilities, have been commonplace for decades before the COVID-19 pandemic and have been repeatedly sustained against constitutional challenges. And during the COVID-19 pandemic, numerous Courts of Appeals rejected constitutional challenges to COVID-19 vaccination requirements. The district court came to the same correct conclusion here, and this Court should affirm.

The University of Virginia ("UVA") Health system required its healthcare employees to become vaccinated against COVID-19 in 2021, providing exemptions for employees who had religious objections or whose medical conditions made them poor candidates for the vaccine. At the time, a highly contagious variant was spreading rapidly across the Commonwealth, and UVA concluded that the requirement was necessary to protect UVA Health's staff and patients, some of whom were very vulnerable to the disease. Antunes was a registered nurse who worked

with patients at UVA's Medical Center. She sought neither a religious nor medical exemption, yet refused to become vaccinated. UVA therefore terminated her employment. Antunes claims that the vaccination policy violated her Fourteenth and Fourth Amendment rights. But such vaccination requirements are subject only to rational basis review, and UVA Health's policy plainly bore a rational relationship to a legitimate governmental interest. This Court should therefore affirm the district court's dismissal of her claims.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over Antunes' claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.[1] This Court has jurisdiction under 28 U.S.C. § 1291.

---

[1] Antunes contends that this Court has jurisdiction under the Administrative Procedure Act (APA), 5 U.S.C. § 702. Antunes Br. at 1. The APA, however, is not a jurisdictional statute, and creates no cause of action against state entities such as UVA. *Lee v. United States Citizenship & Immigration Services*, 592 F.3d 612, 619 (4th Cir. 2010) ("The APA is not a jurisdiction-conferring statute.") (internal citation omitted) (cleaned up); *South Carolina Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 330 (4th Cir. 2008) (holding that the APA does not "provide[] a cause of action against state actors"). Antunes also contends that this Court has jurisdiction under 42 U.S.C. § 1983 and § 1988, but those are likewise not jurisdictional statutes. *Blue v. Craig*, 505 F.2d 830, 836 (4th Cir. 1974); *Keene Corp. v. Cass*, 908 F.2d 293, 298 (8th Cir. 1990). Rather, the district court had jurisdiction pursuant to 28 U.S.C. § 1331 and 28

## ISSUES PRESENTED

1.     Whether the district court properly dismissed Antunes's Fourteenth Amendment claim because the vaccination policy satisfies rational basis review.

2.     Whether the district court properly dismissed Antunes's Fourth Amendment claim because UVA effected neither a search nor a seizure under the Fourth Amendment, and because UVA's vaccination policy for healthcare workers was reasonable.

## STATEMENT OF FACTS

### I.   Factual Background

UVA runs a health system, including a Medical Center, in Charlottesville, Virginia. JA12. UVA Health's policy provides that it may require employees to obtain vaccinations "as may be necessary for infection control and patient safety." JA40. Catherine Antunes is a registered nurse who began working at UVA's Medical Center in January 2020. JA9, 12. Within a few months, COVID-19 became widespread throughout the United States, including in the Charlottesville area. See JA14.

---

U.S.C. § 1343, because Antunes brought claims against state entities alleging violations of her federal rights.

In August 2021, UVA Health experienced an "increasing number of new COVID-19 cases," including from a new and highly-transmissible variant. JA47, 50–51. At the time, the United States Food and Drug Administration (FDA) had granted Emergency Use Authorization (EUA) to three different COVID-19 vaccines, including a Pfizer-BioNTech vaccine. JA14. The FDA had granted full approval to one vaccine, Pfizer-BioNTech's Comirnaty. JA15. Comirnaty had the "same formulation" and was "interchangeable" with the Pfizer-BioNTech vaccine that had EUA, with "certain differences that d[id] not impact safety or effectiveness" but that made the two "legally distinct." JA45. The FDA, as well as the United States Centers for Disease Control (CDC), had reported to the public that the vaccines were safe and effective at preventing COVID-19, and at preventing serious illness in those who contracted COVID-19. JA14–15, 51–52. More than 100 million Americans had received one of the COVID-19 vaccines. JA51.

Accordingly, in August 2021, UVA required its healthcare employees with neither "a religious or medical exemption" to become vaccinated against COVID-19 by November 2021. JA47–48. UVA explained that this decision was "not one [it] took lightly." JA50. UVA

"considered several major public health and professional organizations' recommendations," and also "consulted with some of the world's foremost infectious disease experts and epidemiologists." JA50. It concluded that the vaccination policy was necessary in light of UVA Health's "primary responsibility to safeguard the health and well-being" of patients; "vaccinated staff creates the safest possible environment for the clinical care of patients, and it ensures that a vulnerable population is protected" from the virus. JA51.

UVA provided that the time employees spent becoming vaccinated would count as "paid time." JA47. It also provided that employees "may schedule appointments at a UVA Health vaccination site," although employees could also obtain vaccines elsewhere if they chose. JA47. UVA explained that, if an employee had neither a religious nor a medical exemption, the employee's refusal to comply with the requirement would subject her to "disciplinary action up to and including termination." JA47.

Antunes had neither a religious objection nor a medical condition preventing her from being vaccinated. JA15–17. She refused, however, to comply with UVA's policy. JA17. She suggested in communications with

UVA personnel that she objected to receiving "Emergency Authorized Use [sic] vaccines." JA55. UVA responded that its current stock of Pfizer-BioNTech vaccines had the EUA label, but that the fully-approved "Comirnaty is the same vaccine . . . formulated and manufactured in the same way," with "no chemical difference" from the Pfizer-BioNTech EUA vaccine. JA55, JA57.

Antunes did not become vaccinated, and she sought neither a religious nor medical exemption. JA17. On November 1, 2021—the effective date of the requirement—UVA suspended Antunes for five days "pending verification that she had received a COVID vaccine." JA17. At the end of that time, Antunes still had not "received any of the vaccines currently available for the treatment of COVID-19 and currently ha[d] no plans to receive any." JA17. She alleged "upon information and belief . . . the vaccine that may properly be labeled 'Comirnaty,' [was] not yet available anywhere in the United States," but did not allege that she made any attempts to obtain Comirnaty at any vaccination sites outside UVA. JA16. Because Antunes had not become vaccinated or sought an exemption, UVA terminated her employment at the Medical Center on November 9, 2021. JA17.

## II.   Procedural History

On November 9, 2021—the day of her termination—Antunes filed a Complaint against the Secretary of the U.S. Department of Health and Human Services, the Acting Commissioner of the Food and Drug Administration, and the UVA Health System. JA3.[2] Antunes subsequently filed First, Second, and Third Amended Complaints, in which she also included as Defendants the Rector and Visitors of the University of Virginia, the U.S. Department of Health and Human Services, and the Food and Drug Administration. JA3–5.

Antunes's Third Amended Complaint, the operative version, alleged that UVA had imposed an unconstitutional condition on employment, violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment, violated the Fourth Amendment's prohibition on unreasonable searches and seizures, and terminated her employment in violation of the common law. JA19–24.

The district court dismissed all claims in the Third Amended Complaint. JA58, 77. As to UVA, the district court held that Antunes had

---

[2] Antunes removed UVA Health System as a defendant from later complaints.

failed to state any valid claim. JA58. The district court held that Antunes's due process claim failed as a matter of law, explaining that Antunes's contention that UVA had "us[ed] economic power to secure 'consent' to an unwanted medical treatment" was "misplaced in a vaccine mandate context." JA69. The Supreme Court's ruling in *Jacobson* made clear that there is no "fundamental right" to refuse vaccination, and the "deferential standard" of rational basis review applied. JA70–71. And given "the risk of COVID-19 contagion in a health care setting," UVA Health's vaccination policy was "rationally related" to the State's legitimate interest in preventing the spread of disease. JA71. As to Antunes's equal protection claim, the court similarly held that rational basis review applied because "policies treating unvaccinated individuals differently than those vaccinated do not target a suspect class." JA68. Again, the policy satisfied rational basis review because the government had a legitimate interest in "preventing COVID-19 from spreading amongst UVA Health personnel and patients," and UVA Health's vaccination policy "bears a rational relationship" to this interest. JA69.

The court also dismissed Antunes's Fourth Amendment claim against UVA. The court held that because Antunes "never received a

vaccination," there had been "no intrusion on her privacy in the form of a warrantless seizure." JA72. In addition, the vaccination policy "appear[ed] not to be a seizure under the Fourth Amendment." JA72. "[R]equiring an at-will employee to receive a vaccination is not a restraint on one's liberty rights," given that "there is no fundamental right to refuse vaccination." JA72. Alternatively, even if it were considered to be a seizure, the vaccination policy would not be an unreasonable seizure, because it did not "intrude[] on [Antunes's] Fourth Amendment interests in a manner outweighing UVA Health's promotion of legitimate governmental interests." JA73. Finally, the vaccination policy was not an unconstitutional condition, because "a state entity acts within its constitutional constraints when directly enacting a vaccination requirement if it has a rational basis to do so." JA73.[3]

The district court dismissed the case in its entirety on September 12, 2022. JA77. Antunes timely appealed the district court's order on November 14, 2022. See JA78.

---

[3] The district court also dismissed Antunes's wrongful discharge claim, JA75–76, a ruling that Antunes does not challenge on appeal.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's grant of a motion to dismiss. *Burns-Fisher v. Romero-Lehrer*, 57 F.4th 421 (4th Cir. 2023). To survive a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and must present "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). This Court accepts the facts alleged in the complaint as true, but a complaint's legal conclusions "are not entitled to the assumption of truth" and are not sufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012).

Antunes contends that the Court "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory." Antunes Br. at 13 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). This contention misstates the law. After *Iqbal* and *Twombly*, "[t]he plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Fracis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). Rather, the plaintiff

must "articulate facts, when accepted as true, that 'show' . . . the 'plausibility of entitlement to relief.'" *Ibid.*

## SUMMARY OF ARGUMENT

UVA's termination of Antunes for failing to comply with its vaccination policy for its healthcare employees was consistent with the U.S. Constitution. Longstanding Supreme Court precedent holds that rational vaccine requirements do not violate the Fourteenth Amendment. As the district court held here, UVA's requirement that its healthcare employees obtain COVID-19 vaccines was rationally related to the legitimate state interest in reducing the spread of communicable diseases at the Medical Center. The requirement therefore did not violate the Due Process Clause. Antunes's Equal Protection Clause claim is not properly preserved on appeal, and in any event fails for the same reasons.

Second, the Fourth Amendment does not apply to Antunes's refusal to receive a vaccine, because she was neither seized nor searched—indeed, she was never vaccinated. Even if UVA's vaccination policy could somehow be considered a "seizure," it complies with the Fourth Amendment because the policy was reasonable. And because the vaccination policy did not violate any constitutional right, it likewise was

not an unconstitutional condition of her employment. This Court should affirm the dismissal of Antunes's claim against UVA.

ARGUMENT

I. **Longstanding Supreme Court precedent demonstrates that the vaccination policy complies with the Fourteenth Amendment**

A. **The vaccination policy complies with the Due Process Clause because it has a rational basis**

First, the district court correctly rejected Antunes's substantive due process claim. Longstanding Supreme Court precedent holds that the Fourteenth Amendment's Due Process Clause allows States to impose vaccination requirements that are rationally related to a legitimate state interest. UVA's requirement that its healthcare employees with no medical contraindications or religious objections be vaccinated against COVID-19 easily satisfies this deferential standard.

To allege a Due Process Clause violation, Antunes must demonstrate both that she has been deprived of her "life, liberty or property interest by a state actor, and that the deprivation of this interest was 'arbitrary in the constitutional sense.'" *Callahan v. North Carolina Dep't of Pub. Safety*, 18 F.4th 142, 145 (4th Cir. 2021) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992)). A government act is

constitutionally arbitrary if it is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Dean ex rel. Harkness v. McKinney*, 976 F.3d 407, 413 (4th Cir. 2020) (citation omitted). Actions that shock the conscience "must lack 'any reasonable justification in the service of a legitimate governmental objective.'" *Washington v. Housing Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

"A substantive due process challenge is considered under rational-basis review unless some fundamental right is implicated." *Doe v. Settle*, 24 F.4th 932, 953 (4th Cir. 2022). Rational basis review "represents a powerful presumption of validity." *Id.* at 943. It requires only that the challenged policy have a "rational relationship" with "some legitimate governmental purpose." *Ibid.* "The state need not make any showing; no evidence of any kind is required; reasonable speculation is enough." *Ibid.* "Nor is there any place in rational-basis review to question the wisdom or logic" of the governmental action. *Ibid.* Rather, the claim can prevail

only if the plaintiff "negate[s] every conceivable basis which might support" the governmental action. *Id.* at 944.[4]

It has been settled law since *Jacobson*, 197 U.S. at 27, that there is no fundamental right to refuse vaccination. Rather, vaccination is among the "manifold restraints to which every person is necessarily subject for the common good." *Id.* at 26. State vaccination requirements are subject to rational basis review, and comply with the Due Process Clause unless they are "unreasonable or arbitrary." *Id.* at 27; *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring) (*Jacobson* "essentially applied rational basis review" to a vaccination requirement).

Since *Jacobson*, several federal Courts of Appeals have considered substantive due process challenges to state vaccination requirements, including challenges to COVID-19 vaccination requirements for

_____

[4] Courts apply a far more exacting constitutional analysis to a State's denial of a religious exemption from a vaccination requirement. See, *e.g.*, *Dahl v. Board of Trustees of W. Michigan Univ.*, 15 F.4th 728, 731–33 (6th Cir. 2021) (per curiam) (applying strict scrutiny to students' claims that they had not been granted a religious exemption to a COVID-19 vaccination requirement). But here, Antunes did not allege that she had any religious objection to COVID-19 vaccination, did not seek a religious exemption under the policy, and did not bring any claim under the First Amendment.

healthcare workers. These cases have consistently reaffirmed that the rational basis test applies under *Jacobson*, and have consistently upheld vaccination requirements under that deferential standard. *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 602 (7th Cir. 2022) (upholding a COVID-19 vaccination requirement for healthcare workers under rational basis review); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293 (2d Cir. 2021) (explaining "the Constitution embodies no fundamental right" against "vaccine requirements," and affirming a COVID-19 vaccination requirement for healthcare workers under rational basis review); *Valdez v. Grisham*, No. 21-2105, 2022 WL 2129071, at *5 (10th Cir. June 14, 2022) (applying rational basis review to uphold a state public health order requiring a COVID-19 vaccination for healthcare workers); see also *Kheriaty v. Regents of the Univ. of California*, No. 22-55001, 2022 WL 17175070, at *1–2 (9th Cir. Nov. 23, 2022) (upholding a COVID-19 vaccination requirement under rational basis review because there is no "'fundamental right' to be free from a vaccine mandate at a workplace").

UVA's vaccination policy more than meets the deferential rational basis standard. UVA's purpose in requiring its healthcare employees to be vaccinated was to ensure the "safest possible environment for the

clinical care of patients," a "vulnerable population," during a surge in COVID-19 infections from a contagious variant. JA51; see pp. 5–6, *supra*. Protecting the health and safety of patients in government-run medical facilities is plainly a "legitimate government purpose." *Doe*, 24 F.4th at 943; see *Roman Catholic Diocese of Brooklyn*, 141 S. Ct. at 67 ("Stemming the spread of COVID-19 is unquestionably a compelling interest."); *Lukaszczyk*, 47 F.4th at 603 ("[G]overnments have an interest in preventing the spread of COVID-19.").

Further, requiring healthcare employees to be vaccinated plainly has a "conceivable" rational relationship to this legitimate governmental interest. *Doe*, 24 F.4th at 943. The FDA and CDC publicly declared the COVID-19 vaccines to be safe and effective at reducing infections and serious illness from the disease. See p. 5, *supra*. UVA also consulted expert medical groups and epidemiologists, who advised that requiring healthcare employees to be vaccinated would help reduce the risk of the employees transmitting the disease to patients and other staff, including vulnerable patients who could not be vaccinated, or for whom vaccines may be less effective (such as the immunocompromised). See pp. 5–6, *supra*; JA51; *Kheriaty*, 2022 WL 17175070 at *2 ("Here, the school cited

its own studies that support its vaccination policy—and that is enough for the policy to survive rational basis review."); see also *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981); Peter J. Embi *et al.*, *Effectiveness of 2-Dose Vaccination with mRNA COVID-19 Vaccines Against COVID-19–Associated Hospitalizations Among Immunocompromised Adults — Nine States*, CDC Morbidity and Mortality Weekly Report (Nov. 5, 2021), shorturl.at/deBMS. UVA's legitimate interest in protecting the health of its patients and staff certainly bore a rational relationship to its COVID-19 vaccination requirement for its healthcare employees. *We The Patriots*, 17 F.4th at 290; *Valdez*, 2022 WL 2129071 at *5.

Antunes argues that UVA's vaccination policy does not rationally promote the government's interest, arguing that "people who have had the vaccine can still spread the disease," and that other measures, such as "Personal Protective Equipment" can be used to reduce disease transmission, as well as pointing to "delay in the implementation of a mandate," and the availability of "religious or medical accommodation." Antunes Br. at 18–19. These arguments do not come close to demonstrating that UVA lacked a "conceivable basis" for the

requirement. *Doe*, 24 F.4th at 944. While vaccines do not entirely prevent the transmission of disease, they are nonetheless helpful in *reducing* transmission, and thus UVA rationally concluded that vaccinating its healthcare employees would increase patient safety. JA40, 51; *Lukaszczyk*, 47 F.4th at 603 ("The evidence that vaccines reduce the rate of transmission provides a reasonably conceivable set of facts to support the mandates.").

Likewise, while other measures such as protective equipment may also reduce transmission, they do not entirely eliminate it, and thus UVA rationally concluded that vaccination would provide additional protection. See *Lukaszczyk*, 47 F.4th at 603. And the availability of accommodations, when no undue hardship is present, for people who are unable to be vaccinated for medical reasons or because of their sincerely held religious beliefs, does not demonstrate that it is irrational to require healthcare employees who have no such issues to be vaccinated. Indeed, it would be a strange result if offering religious exemptions to comply with the Free Exercise Clause rendered the underlying vaccination requirement so utterly irrational that it violated the Due Process Clause. The Constitution does not require such a result.

Antunes's remaining arguments similarly lack merit. Antunes contends that *Jacobson* is not good law because it is "ancient history." Antunes Br. at 9, see *id.* at 21–23. But Supreme Court precedents remain binding on the Courts of Appeals unless and until the Supreme Court overrules them. "If a precedent of th[e Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to th[e Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Qijas*, 490 U.S. at 484. The Supreme Court has not overruled *Jacobson*, and it therefore "remains binding precedent." *We the Patriots*, 17 F.4th at 293 n.35.

Antunes appears to suggest that *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261 (1990), impliedly overruled *Jacobson* by stating that "[t]he principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment may be inferred from our prior decisions." *Id.* at 278; see Antunes Br. at 19, 22–23. The Second Circuit correctly rejected this precise argument. *We The Patriots*, 17 F.4th at 293. Far from overruling *Jacobson*, *Cruzan* relied on it, explaining that *Jacobson* establishes that

"the State's interest in preventing disease" outweighs "an individual's liberty interest in declining an unwanted smallpox vaccine." *Cruzan*, 497 U.S. at 278; see *We The Patriots*, 17 F.4th at 293. And, in any event, the Supreme Court has forbidden lower courts from treating its precedents as having been impliedly overruled. See *Agostini v. Felton*, 521 U.S. 203, 207 (1997) ("The Court neither acknowledges nor holds that other courts should ever conclude that its more recent cases have, by implication, overruled an earlier precedent. Rather, lower courts should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

Further, state vaccination requirements have remained commonplace since *Jacobson* was decided, and federal courts have frequently relied on the case in holding such requirements constitutional. For instance, this Court cited *Jacobson* in holding that "a state may constitutionally require school children to be immunized," given "the compelling interest of society in fighting the spread of contagious diseases through mandatory inoculation programs." *Workman v. Mingo County Bd. of Ed.*, 419 Fed. Appx. 348, 356 (4th Cir. 2011); see *Goe v. Zucker*, 43 F.4th 19, 32 (2d Cir. 2022) (upholding a school vaccination

requirement under rational basis review). And again, numerous Courts of Appeals have rejected challenges to requirements that healthcare workers be vaccinated. See pp. 15–16, *supra*. Against this overwhelming weight of authority, Antunes fails to cite even a single case holding that *Jacobson* is not good law or that a state vaccination requirement violates the Due Process Clause.

Antunes's attempt to distinguish *Jacobson* on the facts also fails. Antunes Br. at 20. Antunes argues that *Jacobson* is inapposite because smallpox is far deadlier than COVID-19. *Ibid.* But "[t]he Supreme Court did not limit its holding in *Jacobson* to diseases presenting a clear and present danger." *Workman*, 419 Fed. Appx. at 353. Rather, *Jacobson* establishes that substantive due process challenges to state vaccination requirements are subject to rational basis review. See pp. 15–16, *supra*. Indeed, *Lukaszczyk,* the very case that Antunes cites to distinguish *Jacobson,* relies on *Jacobson* to affirm a COVID-19 vaccination requirement for healthcare workers under rational basis review. *Lukaszczyk*, 47 F.4th at 603.

Finally, Antunes contends that UVA's vaccination policy is "egregious, and conscience-shocking" by comparing it to, among other

things, forced sterilization for eugenic purposes, sexual assault, "sexual coercion at work," Nazi medical experiments, and the infamous Tuskegee syphilis study. See, *e.g.*, Antunes Br. at 4, 14, 22–23. The comparison itself is shocking. An employment condition for healthcare workers at a university to become vaccinated during a pandemic is simply not analogous to anything in Antunes's list of historically contemptible government abuse. UVA enacted the policy to protect the hospital's staff and patients, not to harm or exploit any disfavored class. JA47–48, 50–51. And under the UVA policy, "[v]accination is a condition of [government] employment in the healthcare field; the State is not forcibly vaccinating healthcare workers." *We the Patriots*, 17 F.4th at 294. As the Second Circuit held in rejecting highly similar claims, "the instant challenge to the mandatory vaccination regime is therefore no more compelling than *Jacobson*'s was more than a century ago." *Ibid.* (citation omitted). The district court's dismissal of Antunes's substantive due process claim should be affirmed.

### B. Antunes's equal protection claim is not preserved and also fails

Antunes appears to argue, in a single sentence, that UVA's vaccination policy also violated the Fourteenth Amendment's Equal

Protection Clause. Antunes Br. at 25. To the extent that Antunes intended to appeal the district court's dismissal of this claim, a single conclusory sentence in a brief is "insufficient to raise on appeal any merits-based challenge to the district court's ruling.'" *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653 n.7 (4th Cir. 2006). Antunes's Equal Protection Clause claim is therefore not properly preserved.

In any event, the Equal Protection Clause claim fails for the same reasons as the substantive due process claim. The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). When the State's classification neither involves "fundamental rights" nor "proceed[s] along suspect lines," it does not violate the Equal Protection Clause as long as "there is a rational relationship between disparity of treatment and some legitimate governmental purpose." *Central State Univ. v. American Ass'n of Univ. Professors, Cent. State Univ. Chapter*, 526 U.S. 124, 127–29 (1999) (citation omitted).

UVA's policy applied to all its healthcare employees regardless of their race, gender, or any other protected class, and thus did not proceed

"along suspect lines." *Central State Univ.*, 526 U.S. at 127–28; JA47–48. Nor did the policy implicate fundamental rights. *Jacobson*, 197 U.S. at 27; see pp. 15–16, *supra*. The policy is thus subject only to rational basis review. For the same reasons explained above, the policy easily satisfies rational basis review because it bears a rational relationship to the government's legitimate interest in protecting the safety of patients and staff at UVA medical facilities. See pp. 16–19, *supra*.

## II. UVA's vaccination policy for its healthcare employees complied with the Fourth Amendment

### A. The vaccination policy was not a search or seizure, and in any event was reasonable

The district court properly dismissed Antunes's "novel" Fourth Amendment claim. JA71. Antunes contends that the vaccination policy violated the Fourth Amendment because UVA used "economic coercion to seize and commandeer [her] immune system for its own purposes[.]" JA22–23. This claim fails because there was no Fourth Amendment seizure, and in any event the vaccination policy was reasonable.

The Fourth Amendment protects people in their "persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. Amend. IV. To prevail on a Fourth Amendment claim, Antunes

"must show [s]he was (1) unreasonably (2) seized (3) by a government actor." *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 386 (4th Cir. 2009). A Fourth Amendment seizure occurs when a government actor uses "force *with intent to restrain.*" *Torres v. Madrid*, 141 S. Ct. 989, 998 (2021) (emphasis in original). If a seizure has occurred, it complies with the Fourth Amendment if it was reasonable, which courts determine by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Ray v. Roane*, 948 F.3d 222, 227 (4th Cir. 2020) (citation omitted).

Here, UVA's vaccination policy did not violate the Fourth Amendment, because the policy was neither a seizure nor unreasonable. The vaccination policy was not a seizure, because it did not bear the requisite "use of force," much less the use of force "*with intent to restrain.*" *Torres*, 141 S. Ct. at 998. Again, UVA did not forcibly vaccinate Antunes. To the contrary, Antunes "never received a vaccination"— demonstrating that "there was no intrusion on her privacy[.]" JA72; *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (holding that if a person can choose to "walk away, there has been no intrusion upon that

person's liberty or privacy" that a Fourth Amendment violation requires); see *B.A.B., Jr. v. Board of Educ. of City of St. Louis*, 698 F.3d 1037, 1040 (8th Cir. 2012) (holding that there was no Fourth Amendment claim when a vaccine recipient failed to allege that it had been administered against his consent).

At no point was Antunes detained or otherwise "not at liberty." *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988). Antunes simply was presented with a condition of continued government employment, refused to meet it, and was accordingly terminated from employment. That Antunes's decision had employment consequences did not elevate it to a Fourth Amendment seizure. "[A]bsent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 600 (2008).

Antunes contends that requiring vaccination as a condition of government employment is "coercive pressure" that "restrained her liberty," and is therefore a Fourth Amendment seizure. Antunes Br. at 17. Antunes candidly "acknowledges the novelty of this approach" and

the "lack of authority available" supporting it. *Id.* at 16. Fourth Amendment analysis "differ[s] according to context," and governmental employees generally do not have the same reasonable expectations of privacy from government supervision given "the operational realities of the workplace." *O'Connor v. Ortega*, 480 U.S. 709, 715, 717 (1987) (plurality); see *Engquist*, 553 U.S. at 599 (2008) (affirming *O'Connor*); *Thomson v. Marsh*, 884 F.2d 113, 115 (4th Cir. 1989) (holding that, for example, government employees with "special" and "obvious" demands of their position had correspondingly lower reasonable expectations of privacy). Indeed, government employment necessarily involves some "restraints on liberty" that the government cannot ordinarily require of other citizens—such as that the employee report to a government facility for forty hours every week. Here, as a nurse at UVA Medical Center, Antunes did not have a reasonable expectation that she would not be required to obtain vaccinations as a condition of continued employment. To the contrary, pre-existing UVA policy provided that UVA Health would "require team members to undergo any additional screening, vaccinations, or tests as may be necessary for infection control and patient safety." JA40.

In any event, even if the vaccination policy could be considered a Fourth Amendment seizure, it complied with the Fourth Amendment because it was reasonable. For the same reasons discussed above, UVA had an important governmental interest in protecting its staff and patients from COVID-19 during a surge in the pandemic. See pp. 16–17, *supra*. And for the same reasons discussed above, requiring healthcare employees to receive COVID-19 vaccines was a reasonable measure to advance that interest. See 17–19, *supra*. Antunes "has alleged no facts, taken as true, that would establish that the vaccination policy intrudes on her Fourth Amendment interests in a manner outweighing UVA Health's promotion of legitimate governmental interests." JA73.

This Court should affirm the dismissal of Antunes's Fourth Amendment claim.

### B. UVA did not provide Antunes with an unconstitutional condition for her employment

Finally, this Court should affirm the district court's holding that UVA did not impose an unconstitutional condition on Antunes's employment. A state "may not deny a benefit to a person because he exercises a constitutional right." *Regan v. Taxation With Representation*

*of Wash.*, 461 U.S. 540, 545 (1983).[5] Courts have applied the "unconstitutional conditions doctrine" based on this understanding, holding that the government violates an individual's constitutional rights if it coerces the individual to give up those rights. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013). Conversely, when the Constitution does not protect the right, the unconstitutional conditions doctrine does not apply. *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 60 (2006).

Antunes's argument fails because UVA's conditions for employment did not violate Antunes's constitutional rights. Antunes fails to identify any constitutional provision that would forbid UVA's vaccination requirement for unexempt healthcare workers during a pandemic. See pp. 12–29, *supra*; JA73. UVA's policy comports with Fourteenth Amendment due process under longstanding precedent providing that States may impose reasonable vaccination requirements. *Jacobson*, 197 U.S. at 27; see pp. 15–25, *supra*. The Fourth Amendment does not apply

---

[5] It is unclear whether Antunes contends that the vaccination policy unconstitutionally conditioned her employment on her surrender of Fourth Amendment rights, substantive due process rights, or both. Regardless, Antunes's unconstitutional conditions argument fails for the same reasons.

to Antunes's decision not to become vaccinated, because the policy was neither a seizure nor unreasonable. *Carroll v. City of Westminster*, 233 F.3d 208, 212 (2000); see pp. 26–29, *supra*. Antunes thus cannot show that UVA terminated her employment because she exercised a constitutional right. *Regan*, 461 U.S. at 545; JA73; see pp. 12–29, *supra*. Thus, her unconstitutional conditions claim necessarily fails. *Rumsfeld*, 547 U.S. at 60.

## CONCLUSION

This Court should affirm the judgment of the district court.

Respectfully submitted,

RECTOR AND VISITORS OF THE
UNIVERSITY OF VIRGINIA

By: ___*/s/ Kevin M. Gallagher*___
       Kevin M. Gallagher
       *Deputy Solicitor General*

JASON S. MIYARES
  *Attorney General*

CHARLES H. SLEMP, III
  *Chief Deputy Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-5315 – Telephone
(804) 371-0200 – Facsimile

March 23, 2023

ANDREW N. FERGUSON
  *Solicitor General*

ERIKA L. MALEY
  *Principal Deputy Solicitor General*

RICK W. EBERSTADT
  *John Marshall Fellow*


*Counsel for University of Virginia
Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 6,961 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century typeface.

*/s/ Kevin M. Gallagher*
_____
Kevin M. Gallagher

## CERTIFICATE OF SERVICE

I certify that on March 23, 2023, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*/s/ Kevin M. Gallagher*
Kevin M. Gallagher